CHAD W. DUNN*
SONNI WAKNIN*
ALANA FRIEDMAN*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90065
Telephone: 310-400-6019

LUIS ROBERTO VERA, JR.*
lrvlaw@sbcglobal.net
Law Offices of Luis Roberto Vera, Jr.
1325 Riverview Towers
111 Soledad St Ste 1325
San Antonio, TX 78205-2260
Telephone: 210−225−3300

MOLLY P. MATTER
Amend Law, LLC
PO Box 13203
Burton, WA 98013
Telephone: 206-280-8724

Attorney for Plaintiffs
* Pro Hac Vice Motion Forthcoming

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARISSA REYES, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LATINO COMMUNITY FUND<br><br>Plaintiffs,<br><br>v.<br><br>BRENDA CHILTON, in her official capacity as Benton County Auditor and Canvassing Review Board member, ANDY MILLER, in his official capacity as Benton County Canvassing Review Board member, XAN AUGEROT, in his official capacity as Benton County Canvassing Review Board member, CHARLES ROSS, in his official capacity as Yakima County Auditor and Canvassing Review Board Member, JOSEPH BRUSIC, in his official capacity as Yakima County Canvassing Review Board member, RON ANDERSON in his official capacity as Yakima County Canvassing Review Board member, SKIP | Case No.:  4:21-cv-05075<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Judge:<br><br>Date Action filed:<br>Date set for trial: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1

2

3

4

5

6

7

8

MOORE, in his official capacity as Chelan
County Auditor and Canvassing Review
Board member, DOUGLAS SHAE, in his
official capacity as Chelan County
Canvassing Review Board member, BOB
BUGERT in his official capacity as Chelan
County Canvassing Review Board member

Defendants.

## I.    INTRODUCTION

1.    Plaintiffs the League of United Latin American Citizens (LULAC), the Latino

Community Fund of Washington, and individual voter Marissa Reyes bring this action

for immediate injunctive and declaratory relief against Yakima County Auditor, Charles

Ross; Yakima County Prosecutor Joseph Brusic; Yakima County Chair of the Board of

County Commissioners, Ron Anderson; Benton County Auditor, Brenda Chilton; Benton

County Prosecutor, Andy Miller; Benton County Chair of the Board of County

Commissioners, Xan Augerot; Chelan County Auditor, Skip Moore; Chelan County

Prosecutor, Douglas Shae; Chelan County Chair of Board of County Commissioners,

Bob Bugert (collectively, "Defendants"), because the practices and impacts of the County

Defendants' verification of mail ballots discriminates against Latino voters and other

racial minorities.

2.    In the primary, general, and special elections of 2020, over 4,500 Latino[1] voters were

denied their right to vote.

---

[1] This Complaint uses the terms "Hispanic" and "Latino" interchangeably to refer to individuals who identify as
Latino/a and/or Hispanic.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

3.    Thousands of Latino voters have been, and continue to be, denied their fundamental right to vote due to the discriminatory application and effect of the State's ballot signature matching provisions and processes.

4.    In the 2020 general election, mismatched signatures accounted for 74% of all rejected ballots.

5.    Ballots with Spanish surnames are significantly more likely overall to be rejected because of a signature mismatch.

6.    In the 2020 general election, Latino voters were on average 3 times more likely than Anglo voters to have their ballot rejected for the sole reason of a perceived mismatched signature.

7.    In the counties with the highest percentage of Latino voters, the difference is more pronounced.  The greater the potential political representation of the Latino community the more disparate treatment voters faced.

8.    In the 2020 general election, Latino voters in Benton County were 3 times more likely to have their ballots rejected for a perceived signature mismatch.

9.    In the 2020 general election, Latino voters in Yakima County were 3.9 times more likely than Anglo voters to have their ballots rejected for a perceived signature mismatch.

10.   In the 2020 general election, Latino voters in Chelan County were 3.2 times more likely than Anglo voters to have their ballots rejected for a perceived signature mismatch.

11.   In the years where turnout has increased, the difference between Latino and Anglo ballots being rejected was materially more pronounced.

12.   Statewide, Latino voter turn-out tripled in 2020 compared to 2019. The rate of rejection due to a mismatch signature doubled in the same time period.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

13.    Latino voters are less likely to vote after having their ballots rejected for a perceived

mismatched signature.  Latino voters whose ballots were rejected due to a signature

mismatch in 2019 were 3 times more likely to not vote in 2020 compared to other Latino

voters who did not have their ballots rejected.

14.    Since 2013, the State of Washington's elections have been conducted almost entirely

through the mail.

15.    Under this system, state law requires that each active registered voter of the state,

overseas voter, and service voter automatically be issued a mail ballot for each general

election, special election, or primary. Wash. Rev. Code Ann. § 29A.40.010.

16.    While there are some in-person opportunities, to provide access for those with

disabilities, nearly all voters vote via a mail ballot.  In 2019, 99.8% of all voters voted by

mail.  In 2020, 99.3% of all voters voted by mail.  *See* Kim Wyman, Office of the

Secretary of State Elections Division, 2020 Annual Report of WA State Elections

(January 2021),

https://www.sos.wa.gov/_assets/elections/research/2020%20annual%20elections%20repo

rt.pdf.

17.    In order for a ballot to be counted under Wash. Rev. Code Ann. § 29A.40.110, a voter

must affix their signature to the outer return envelope on the mail ballot that has a

declaration printed on it.

18.    Then, under the requirements described herein by the Legislature and Secretary of State,

local election officers undertake a signature matching process to verify each ballot.

19.    A county's respective canvassing board or its designated representatives examine the

signature on the ballot envelope declaration in order to verify that the voter's signature on

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

the ballot envelope declaration matches the signature on file in the county's voter registration record.

20.    If a reviewer determines that the signatures do not match ("signature mismatch"), the ballot is flagged and not counted until a voter corrects or cures the ballot.

21.    A signature on a petition sheet (the outer envelope of the ballot) must be matched to the signature on file in the voter registration records. The following characteristics must be used to evaluate signatures to determine whether they are by the same writer: (1) The signature is handwritten;  (2) Agreement in style and general appearance, including basic construction, skill, alignment, fluency, and a general uniformity and consistency between signatures; (3) Agreement in the proportions of individual letters, height to width, and heights of the upper to lower case letters; (4) Irregular spacing, slants, or sizes of letters that are duplicated in both signatures; (5) After considering the general traits, agreement of the most distinctive, unusual traits of the signatures. A single distinctive trait is insufficient to conclude that the signatures are by the same writer. There must be a combination or cluster of shared characteristics. Likewise, there must be a cluster of differences to conclude that the signatures are by different writers.  Wash. Admin. Code § 434-379-020.

22.    A variation between the signature of the voter on the ballot declaration and the signature of that voter in the registration files due to the substitution of initials or the use of common nicknames is permitted so long as the surname and handwriting are clearly the same.  Wash. Rev. Code Ann. § 29A.40.110(3).

23.    If the signature on the ballot declaration does not match the signature on the registration record because the voter signed with a middle name, nickname, or initials, the ballot may

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

be counted as long as the last name and handwriting are clearly the same.  Wash. Admin. Code § 434-261-050.

24. There are no standards employed by the Defendants whatsoever to guide individual county level reviewers in determining what characteristics to look for when determining when "handwriting is clearly the same."

25. Respecting the policy choice of the State, the signature match process employed by Defendants to confirm mail ballots is racially discriminatory in its implementation and effect.

26. Signature match reviewers are lay persons drawn from the community without specialty training in signature analysis.

27. The Defendants' implementation of signature matching to verify ballots has resulted in Latino voters in Washington having their ballots rejected at substantially higher rates than their non-Latino counterparts across the state of Washington.

28. The Fourteenth and Fifteenth Amendments of the United States Constitution guarantee the fundamental right to vote and prohibit the denial or abridgment of this right due to race.  Section 2 of the Fifteenth Amendment authorized Congress to pass the Voting Rights Act, 52 U.S.C. § 10301.  Rejecting ballots because of the race of the voter constitutes a denial of the right to vote, in violation of the Fourteenth and Fifteenth Amendment.  Rejecting ballots because of the race of the voter constitutes abridgment of the right to vote on account of race and language minority status, in violation of Section 2 of the federal Voting Rights Act.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

## II.     JURISDICTION AND VENUE

29.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

30.     This Court has personal jurisdiction over Defendants, who are elected or appointed

officials for the State of Washington or Washington Counties and are sued only in their

official capacities as officials of the State of Washington and are residents of the State of

Washington.  The violations complained of concern their conduct in such capacity.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part

of the events or omissions giving rise to Plaintiffs' claims occurred and will occur in this

judicial district.

32.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C.

§§ 2201 and 2202.

## III.     PARTIES

33.     Plaintiff Marissa Reyes is over the age of 18, registered to vote, and is Latino.

34.      Ms. Reyes resides in Benton County.

35.     In 2020, Ms. Marissa Reyes voted in the primary election and signed her ballot envelope

declaration.

36.     Plaintiff Marissa Reyes had her ballot rejected in the 2020 primary election and was not

able to cure her ballot.

37.     Ms. Reyes received a letter in the mail from Benton County Elections Office.  She was

unable to cure her signature.

38.     Plaintiff League of United Latin American Citizens ("LULAC") is the oldest and largest

national Latino civil rights organization in the United States. LULAC is a non-profit

membership organization with a presence in most of the fifty states, including

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

Washington. It was founded with the mission of protecting the civil rights of Latinos, including voting rights.

39. LULAC participates in civic engagement activities, such as voter registration, voter education, and voter turnout efforts throughout the United States.

40. LULAC's mission to educate voters, includes expending resources to ensure that LULAC membership and Latinos are able to have their ballots counted.

41. LULAC has to expend more resources to educate voters due to their membership being at higher risk of being disenfranchised due to disproportionate rate of ballot rejection.

42. LULAC has been recognized and accepted as an organizational plaintiff protecting Latino rights in federal courts across the country, including the United States Supreme Court.

43. Plaintiff Latino Community Fund of Washington is a statewide organization that invests in community based non-profit organizations that serve to educate, increase civic participation, improve health outcomes, and improve economic, social and technological development for all Washingtonians.

44. Latino Community Fund (LCF) of Washington participates in civic engagement activities, such as voter registration, voter education, and voter turnout efforts statewide but specifically in Yakima County, Benton County, and Chelan County. LCF of Washington's mission to educate voters includes expending resources to educate Latino on how to cure their ballots and ensure their ballots count.

45. LCF of Washington has to expend more resources in Yakima County, Benton County and Chelan County to educate voters due to the higher risk of Latino voters being disenfranchised due to the disproportionate rate of ballot rejection.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

46.     LCF of Washington funds organizations across the state that engage in voter outreach and voter education by registering voters who are eligible to, have voted, and plan to vote in Washington through the mail voting system.

47.     LCF of Washington engages in voter education and voter empowerment activities, including educating voters on how to properly vote in Washington.

48.     LCF of Washington also leads legislative advocacy with community leaders regarding the impact of legislation on the Latino community.

49.     Defendants Brenda Chilton, Andy Miller and Xan Augerot are current members of the Benton Board of Canvassers for Benton County.  They have authority to determine whether a signature matches the signature on file for a given voter during the ballot processing stage.  The members of the Board of Canvassers for Benton County are each being sued in their official capacity only.

50.     Defendants Charles Ross, Joseph Brusic and Ron Anderson are current members of the Yakima Board of Canvassers for Yakima County.  They have authority to determine whether a signature matches the signature on file for a given voter during the ballot processing stage.  The members of the Board of Canvassers for Yakima County are each being sued in their official capacity only.

51.     Defendants Skip Moore, Douglas Shae and Bob Bugert are current members of Chelan County Board of Canvassers.  They have authority to determine whether a signature matches the signature on file for a given voter during the ballot processing stage.  The members of the Board of Canvassers for Chelan County are each being sued in their official capacity only.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

1

2

### IV.    FACTUAL ALLEGATIONS

3

**Mail Voting in the State of Washington**

4

5

52.    In 2005, the State of Washington passed multiple election reforms, chief among them

6

was that counties were given the option of conducting elections entirely by mail.  This

7

reform resulted in over two-thirds of counties in Washington utilizing the mail ballot-

8

only election voting scheme.

9

53.    In 2011, Senate Bill 5142 was signed into law, replacing the existing election

10

infrastructure and mandating that all counties in the State of Washington conduct their

11

elections by mail.

12

13

54.    Since 2013, Washington voters vote almost entirely by mail through this system.

14

55.    The mail voting system in Washington is governed by Chapter 29A.40 of the Washington

15

Code.

16

56.    Under Washington's mail voting system, "each active registered voter of the state,

17

overseas voter, and service voter shall automatically be issued a mail ballot for each

18

general election, special election, or primary." Wash. Rev. Code Ann. § 29A.40.010.

19

20

57.    After a voter has received her ballot, that voter must properly mark up her ballot, if she

21

chooses to vote.  After marking the ballot, the voter is required to place the ballot into a

22

security envelope, which conceals the voted ballot. Wash. Rev. Code Ann. § 29A.40.091.

23

58.    In order to properly cast a mail ballot, a voter is required to sign the declaration that is

24

printed on the outer return envelope on the mail ballot, which is sent out by the respective

25

county auditor along with the voter's ballot.

26

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

59.    Under Wash. Rev. Code Ann. § 29A.40.091(2),

> The voter must swear under penalty of perjury that he or she meets the qualifications to vote and has not voted in any other jurisdiction at this election. The declaration must clearly inform the voter that it is illegal to vote if he or she is not a United States citizen; it is illegal to vote if he or she has been convicted of a felony and has not had his or her voting rights restored; and it is illegal to cast a ballot or sign a ballot declaration on behalf of another voter. The ballot materials must provide space for the voter to sign the declaration, indicate the date on which the ballot was voted, and include a telephone number.

60.    Once a voter signs the declaration, the voter must return her ballot to the county auditor no later than 8:00pm on the day of the election or mail the ballot with a postmark no later than the day of the election. Wash. Rev. Code Ann. § 29A.40.091(4).

61.    Once a voter's ballot has been received, election officers may begin opening and processing the return envelopes for any primary or elections upon receipt. Wash. Rev. Code Ann. § 29A.40.110(1).  Before the processing of a ballot, "the canvassing board, or its designated representatives, shall examine the postmark on the return envelope and signature on the declaration before processing the ballot." Wash. Rev. Code Ann. § 29A.40.110(3).

62.    The canvassing board and designated representatives assign staff to verify that the voter's signature on the ballot envelope declaration is the same as the signature in the voter registration files of the County. *Id.*

63.    The Washington State Voter Registration Form publicly available does not inform voters that their signature will later be used to verify their mail ballots. *See* WASHINGTON

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

SECRETARY OF STATE,

https://www.sos.wa.gov/_assets/elections/abvr/forms/english/vrf_english_web_a5.pdf.

64.  There is no indication that county officials inform voters that the signature on their voter registration will be later matched to their ballots.

65.  When voters register to vote through the Washington Department of Licensing, voters affix their voter registration signatures on an electronic signature pad.  There is no indication that the Washington Department of Licensing staff informs each voter that the electronic signature used for their driver's license will be later matched to their ballots.

66.  Staff assigned to verify signatures are required to receive training on statewide standards for signature verification. Wash. Rev. Code Ann. § 29A.40.110(3).

67.  Signature verification training is not mandated for the canvassing review board.

68.  Instead, "The secretary of state shall prepare a training program for county canvassing board members. The training shall be made available upon request."  Wash. Admin. Code § 434-260-320.

69.  A variation between the signature of the voter on the ballot declaration and the signature of that voter in the registration files due to the substitution of initials or the use of common nicknames is permitted so long as the surname and handwriting are clearly the same.  Wash. Rev. Code Ann. § 29A.40.110(3).

70.  If the signature on the ballot declaration does not match the signature on the registration record because the voter signed with a middle name, nickname, or initials, the ballot may be counted as long as the last name and handwriting are clearly the same.  Wash. Admin. Code § 434-261-050.

71.    If the canvassing board or designated representative perceives a discrepancy between the signature on file and the signature on the ballot, "the county auditor shall notify the voter by first class mail of the correct procedures for curing the signature." Wash. Admin. Code § 434-261-050.  This also applies to cases in which the voter neglects to sign a ballot envelope declaration or signs with a mark and fails to have two witnesses attest to the signature.

72.    If the signature on the declaration does not match the signature on the voter registration record, the voter must either: (a) Appear in person and sign a new registration form no later than the day before certification of the primary or election.  The updated signature provided on the registration form becomes the signature in the voter registration record for the current election and future elections; or (b) Sign a signature update form that includes both the ballot declaration required by WAC  434-230-015 and the voter registration oath required by RCW 29A. 08.230 and return it to the county auditor no later than the day before certification of the primary, special or general election.  The signature provided on the signature update form becomes the signature in the voter registration record for the current election and future elections. Wash. Admin Code 434-261-050(3).

73.    If the ballot is received during the last three business days before the final meeting of a county's canvassing board or the voter has already been notified of the discrepancy and has not responded by the last three days before the final canvassing review board meeting, the county auditor is required to notify the voter by telephone. Wash. Admin Code 434-261-050(1).

74.    If a voter does not cure or correct their signature mismatch, their vote will not be counted.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

75. Regardless of a curing period or provision, voters may still have their vote denied due to a signature mismatch or mis-verification even after a voter attempts to cure their ballot by either appearing in-person at the county elections office or by mailing in the required forms.

### Discrimination in Signature Verification

76.  Defendants' system of reliance on signature verification, implemented by untrained or somewhat trained persons, is a flawed means of determining whether a mail ballot was fraudulently cast by a voter.

77. Generally, no two signatures, even by the same signer, are the same.

78. Moreover, the signature on file that officials are comparing to the signed affidavit may be years if not decades old.

79. A signature by a voter can vary due to intentional or unintentional factors. *See* Tomislav Fotake, et al., *Handwritten signature identification using basic concepts of graph theory,* WSEAS TRANSACTIONS ON SIGNAL PROCESSING 117,117 (2011).

80. Signature matching processes are particularly burdensome and harmful for racial and ethnic minority voters.

81. A report by Dr. Daniel Smith, studying ballot rejections in Florida, found that in multiple elections, ballots cast by Black registered voters in Florida were twice as likely to be rejected as those cast by older white voters. *See* Daniel A. Smith, *Vote-by-Mail Ballots Cast In Florida,* American Civil Liberties Union of Florida (Sep. 19, 2018), http://www.aclufl.org/sites/default/files/aclu_-vote_by_mail_-_report.prf.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

82.    Washington law does provide some guidance for signature verification that counties are required to follow.

83.    Acceptable variations that do not disqualify a ballot include the substitution initials of a voter and the use of common nicknames as long as the "surname and handwriting is clearly the same." *See* Wash. Rev. Code Ann. §29A.40.110(3).

84.    If the signature on the registration record does not match due to a different last name, a "ballot may be counted as long as the first name and handwriting is clearly the same". Wash. Admin. Code §434-261-050.

85.    Washington law does not define what makes the handwriting of a voter "clearly the same."

86.    While there is statewide guidance for the signature verification process, it provides a great deal of discretion to individual county board of canvassers in determining whether the handwriting of a voter on their ballot declaration matches that on file.

87.    This discretion has been applied in a discriminatory way towards Latino voters in almost all counties in the State of Washington, including Yakima, Benton, and Chelan Counties.

### Washington's Signature Matching Requirement Is Applied in a Manner that Unconstitutionally Burdens Latino Voters

88.    The signature matching policy in the State of Washington has the effect of discriminating again Latino voters.

89.    The lack of clearly intelligible standards for what constitutes "handwriting that is clearly the same" allows for the untrained discretion of the canvassing review board, which has had the effect of disproportionately burdening Latino voters in the State of Washington.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

90.     Ballot status files publicly provided by the Washington Secretary of State for all elections conducted in 2019 and 2020 show a clear pattern: Latino voters or those with Spanish surnames are having their ballots rejected at higher rates than Anglo or White voters for the reason of a mismatched signature.

91.     Compared to Anglo voters, Latinos were 2.5 times more likely to have their ballots rejected because of a signature mismatch on average for the primary, special, and general elections occurring during 2019 and 2020 primary.

92.     Signature mismatch rejection rates vary by county.

93.     Across all elections in 2019 and 2020, Latino voters in Yakima County were 4.3 times more likely to have their ballots rejected for a mismatched signature compared to Anglo voters.

94.     Across all elections in 2019 and 2020, Latino voters in Chelan County were 6.2 times more likely to have their ballots rejected for a mismatched signature compared to Anglo voters.

95.     Across all elections in 2019 and 2020, Latino voters in Benton County were 3.2 times more likely to have their ballots rejected for a mismatched signature compared to Anglo voters.

96.     The figure below shows how many times higher the signature mismatch rejection rate was for Latino voters compared to Anglo voters in Washington counties across all elections in 2019 and 2020. Note that the Garfield, Pend Oreille, and Skamania counties did not reject any ballots cast by Latino voters for signature mismatch and are not included in the chart.

97.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724



98.   In the 2020 general election, Latino voters in Yakima County were 3.9 times more likely to have their ballots rejected for a mismatched signature compared to Anglo voters.

99.   In the 2020 general election, Latino voters in Chelan County were 3.2 times more likely than Anglo voters to have their ballots rejected for a perceived signature mismatch.

100.   In the 2020 general election, Latino voters in Benton County were 3 times more likely to have their ballots rejected for a perceived signature mismatch.

101.   Compared to the 2019 general election, Latino voter turn-out tripled in the general 2020 election. The increase in Latino voter turn-out correlated with an increase in Latino surname ballot rejections due to a perceived mismatched signature. The rate of rejection for Latino surname ballots, due to a perceived signature mismatch, doubled.

102.   In the 2020 general election, Latino voters, statewide, were 3 times more likely to have their ballots rejected compared to Anglo voters.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

103.    In Yakima County, Latino voter turn-out increased from 16% to 56% between the 2019 general election and the 2020 general election.  Comparatively, non-Latino voter turn-out increased from 42% to 84% between the 2019 general election and the 2020 general election.

104.    Latino voters are less likely to vote after having their ballots rejected for a perceived mismatched signature.

105.    Latino voters whose ballots were rejected due to a signature mismatch in 2019 were 3 times more likely to not vote in 2020 compared to other Latino voters who did not have their ballots rejected for a mismatched signature.

106.    While the likelihood of signature mismatch ballot rejection varied for all voters depending on a voter's county of residence, Latino voters continually faced higher mismatch compared to non-Latino and/or Anglo voters regardless of what county of residence a Latino voter lived in.

107.    Simply put, a Latino voter in almost all counties in Washington was more likely than any Anglo voter to face a signature mismatch rejection.

108.    Compared to their share of total ballots cast, Latino voters are overrepresented in their share of signature mismatch rejected ballots.

109.    The figure below provides a visualization of the share of Latino ballots rejected for signature mismatch compared to the Latino populations share of the vote per county.

110.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    111.    Defendants' unreliable signature verification process disproportionately rejects a

18    significant number of validly cast ballots specifically by Latino voters as a result of

19    Defendants' discretion, disparate treatment of Latino voters and lack of intelligible

20    signature matching standards.

21    112.    Defendants' discriminatory application of the signature matching provision in a

22    discriminatory manner has caused a disparate effect targeting Latino voters based on their

23

24    race and/or ethnicity.

25

26

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

113.  Because ballots being reviewed show the voter's name and surname, Latino surnames are being flagged at higher rates and facing more intense scrutiny because of the voter's surname.

114.  Latino ballots are being rejected for signature mismatch *on account of* the perceived race of the voter.

115.  This practice is clearer in counties with higher Latino populations.  Latinos comprise 37% of the total population and 21% of the voting population in eight counties—Adams, Benton, Chelan, Douglas, Franklin, Grant, Walla Walla, and Yakima— in Central and Eastern Washington.  Latinos in these counties account for 29% of the total Latino voting population in Washington.  *See* Joy Borkholder, *Latino Voters Have Higher Than Average Ballot Signature Rejection Rates in Washington State,* InvestigateWest (Feb. 15, 2021), https://www.invw.org/2021/02/15/latino-voters-have-higher-than-average-ballot-signature-rejection-rates-in-washington-state/.

116.  "In these eight counties, Latino voters contributed 17% of accepted ballots in November 2020, but 46% of ballot rejections." *Id.*

117.  Latino voters are also correcting or curing their signatures when flagged at lower rates than non-Latino voters. *Id.*

118.  Two of the major cities in these eight counties, the City of Yakima and the City of Pasco, have both been found in violation of Section 2 of the Voting rights Act for their discriminatory election systems.

119.  The burden placed on Latino voters is excessive because it interacts with socioeconomic disparities.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

120.   Here, in the State of Washington, voters may not be notified of their challenged ballot for weeks AFTER Election Day and may not be notified with sufficient time to cure their ballots.

121.   Voters have to either appear in-person at the county elections office in order to cure their challenged ballot or have to fill out multiple forms and return such forms in the mail.

122.   Due to the socioeconomic conditions and socioeconomic disparity of Latino voters, these additional actions required of Latino voters places an undue burden on accessing the franchise.

123.   The burden is not slight.  The burden is excessive.  This burden is demonstrated by the low rate at which Latino voters respond to the challenge and are able to effectively cure their ballots.

### V.    CLAIMS FOR RELIEF

#### Count 1

#### Race and Language Minority Discrimination,
#### Section 2 of the Voting Rights Act
#### 52 U.S.C. § 10301

124.   Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all allegations in this Complaint.

125.   Washington's Latino voters are disproportionately burdened by the signature matching policy in the State, as Latino voters are more than twice as likely as Anglo voters to have their signatures flagged for mismatch.  Latino voters in Yakima, Benton and Chelan Counties are three to six times more likely to have their ballots rejected due to a signature

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

mismatch.  Consequently, voters who have had their ballots flagged must correct or cure their ballot in order for their vote to be processed and counted.

126.    Latino voters, however, cure their ballots at lower rates than non-Latino voters.

127.    When a Latino voter's ballot is flagged, there is a higher likelihood that they will not have their ballot counted compared to non-Latino voters and will be denied their right to vote.

128.    Defendants' implementation of the signature matching policy violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because it results in the denial of the right to vote on account of race and language minority status, insofar as, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process.

129.    Voters with Spanish surnames in these Washington State counties bear the effects of discrimination in education, employment and health, which hinder their ability to participate in the political process.  These socioeconomic disparities interact with signature verification process to create an excessive burden to the equal opportunity to vote.

130.    The application of Washington's signature matching policy's by the Defendants in Yakima, Benton, and Chelan counties in Washington violates Section 2 because it denies and abridges the right to vote on account of race and language minority status.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

**Count 2**

**Race and Language Minority Discrimination,**
**Section 2 of the Voting Rights Act**
**52 U.S.C. § 10301**

131.  Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all allegations in this Complaint.

132.  The application of Washington's signature matching policy by individual counties and named Defendant counties intentionally discriminates against Latino voters.

133.  The County Defendants, through the canvassing boards, are rejecting Latino ballots for signature mismatch *on account of* the perceived race of the voter when examining the voter's signature.

134.  Washington's signature matching policy violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because the Defendants are intentionally applying the law in a discriminatory manner and placing a burden on Latino voters.

135.  Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process.

136.  Washington's signature matching policy's application by the canvassing boards in counties in Washington violates Section 2 because it denies and abridges the right to vote on account of race and language minority status.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

**Count 3**

**Arbitrary Disenfranchisement in Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

**42  U.S.C. § 1983**

137.    Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all allegations in this Complaint.

138.    Voters in the Defendant Counties face burdens on their ability to have their vote counted based on their race, as Latino voters have their ballots rejected for signature mismatch over three times higher than Anglo voters.

139.    Latino voters are being treated unequally in access to the franchise as a class across the state of Washington due to both the signature matching requirement under Washington law and the application of such requirement by the individual canvassing boards.

140.    "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.  Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Bush v Gore*, 531 U.S. 98, 104-05; *see also id.* at 106 (finding that voting procedures that "vary not only from county to county but indeed within a single county" are not "sufficient [to] guarantee[] equal treatment"); *see, e.g.*, *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.").

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

141.   Defendants' application and implementation of the signature matching requirement creates disparate burdens on Latino voters across and within counties and allows arbitrary disenfranchisement in violation of the Equal Protection Clause of the Fourteenth Amendment.

**Count 4**

**Violation of Plaintiffs' Fundamental Right to Vote**

**First and Fourteenth Amendments**

**42 U.S.C. § 1983**

142.   Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all allegation in this Complaint.

143.   The First and Fourteenth Amendments of the United States Constitution protect the fundamental right to vote.  See *Burdick v. Takushi*, 504 U.S. 428, 433-44, 112 S.Ct. 2059, 60 USLW 4459 (1992).  The political franchise of voting "is regarded as a fundamental political right, because preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).   "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Bush v. Gore*, 531 U.S. 98, 104-05, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

144.   When analyzing the constitutionality of a restriction on voting, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into

consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)).  When a burden on the right to vote is severe or discriminatory, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.ed.2d 711 (1992)).

145.    Defendants' application of Washington's signature matching policy disproportionately affects Latino voters because Latino voters are, on average, more than three times as likely as Anglo voters of having their ballots rejected due to mismatch.  This places Latino voters at higher risk of total disenfranchisement than Anglo voters because Latino voters bear the burden to correct or cure their ballots.

146.    The burden is made even more severe by Washington's virtually all-mail elections. Latino voters are not given the opportunity to utilize other voting methods in a meaningful way and simply cannot vote elsewhere in order to cast a ballot that is not at a higher risk than non-Latino voters of being rejected for signature mismatch.

147.    The burden is made even more severe by the socioeconomic disparities of Latino voters and how these disparities interact with the voter verification processes.

148.    The application of the signature matching requirement unconstitutionally burdens the fundamental right of Latino voters in Defendant Counties to access the franchise, including individual and organizational Plaintiffs, in violation of the First and Fourteenth Amendments to the U.S. Constitution.

1

2

**Count 5**

3

4

**Violation of Plaintiffs' Right to Vote Free from Racial Discrimination**

**Fifteenth Amendment**

5

**42 U.S.C. § 1983**

6

149.    Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in

7

this paragraph, all allegations in this Complaint.

8

9

150.    The signature matching policy in the State of Washington permits intentional

10

discrimination, as those with Latino surnames and Latino voters are able to be flagged for

11

a signature mismatch and have their ballots rejected at a higher rate than non-Latino

12

voters by the canvassing boards in each county.

13

151.    This system discriminates against Plaintiffs on the basis of race and national origin in

14

violation of the Fifteenth Amendment to the U.S. Constitution.

15

**Count 6**

16

17

**The Challenged Provisions Result in the Denial of Procedural Due Process**

18

**Fourteenth Amendment**

19

20

**42 U.S.C. § 1983**

21

152.    Plaintiffs' repeats, repleads, and incorporates by reference, as though fully set forth in

22

this paragraph, all allegation in this Complaint.

23

153.    The Fourteenth Amendment of the United States Constitution prohibits states from

24

depriving "any person of … liberty… without due process of law…." U.S. Const. amend.

25

XIV, § 1.

26

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

1
2
3
4
5
6
7
8
9

154.    The right to vote is a constitutional right and citizens retain a liberty interest in voting.  In the State of Washington, the right to vote is equated with the right to vote using a mail ballot, as Washington has created a mail voting scheme.  Voters, therefore, have and retain a liberty interest in voting using mail ballots and any state laws governing that policy must comply with the Due Process Clause.  *See Wilkinson v. Austin,* 545 U.S. 209, 221, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'… or it may arise from an expectation or interest created by state laws or policies.").

10
11
12
13
14
15
16
17
18

155.    Once a plaintiff shows that the State has deprived them of a liberty interest and that the state has done so without due process of law, the Court applies a three-part balancing test, first set out in *Mathews v. Eldridge,* 424 U.S. 319, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  Courts balance: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* at 335.

19
20
21
22
23
24
25
26

156.    Defendants' application of the State of Washington's signature matching policy violates the Due Process Clause because individual boards of canvassers are implementing a curing process that is standardless: Counties are permitted to reject ballots based on their own assessment, discretion and standards.  Inasmuch as this standardless assessment is applied and individual boards of canvassers have discretion to determine what handwriting is "clearly the same", Latino voters are denied their private liberty interest without due process of law.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

157. Defendants' application of the State of Washington's signature matching policy also violates the Due Process Clause by implementing divergent practices and procedures across the state that allow some voters more opportunities than others to cure their ballots (e.g., some counties mail a self-addressed stamped envelope in order to facilitate the return of a voter's signature cure form; some counties allow receipt of cure forms up until one day prior to the day of certification whereas other counties allow receipt of cure forms up until three days prior to the day of certification; some counties call voters multiple times; some counties email as well as mail letters to inform voters of their challenged ballot).

158. Voters have a significant private interest in having one's vote counted, as voting is a "fundamental political right" that is "preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. at 370.

159. There is a substantial risk of erroneously depriving a Latino voter of their right to vote by permitting individual board of canvassers and their designated representatives to determine what handwriting is "clearly the same" and to reject ballots based on their cursory, unfettered discretion that two signatures do not match.

160. The government's interest in maintaining the integrity of an election weighs in favor of reforming the signature matching policy, as election integrity depends on counting all ballots that are legitimately cast.  Any additional burdens the government may incur are minimal in light of the substantial burden on voters.

161. Latino voters who are having their ballots rejected due to the signature matching policy, as implemented by the counties, are being deprived of Due Process under the Fourteenth Amendment.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

AMEND LAW LLC
P.O. Box 13203
Burton, Washington 98013 ~ (206) 280-8724

1

## VI.    PRAYER FOR RELIEF

Plaintiffs, on their behalf and on behalf of the members of the Class, request that the Court:

162.    Declare that Defendants' application of Wash. Rev. Code Ann. §29A.40.110 violates the United States Constitution;

163.    Declare that Defendants' application of Wash. Rev. Code Ann. §29A.40.110 violates Section 2 of the Federal Voting Rights Act 52 U.S.C. § 10301;

164.    Enjoin Defendants, their agents and successors, and all persons acting in concert with, or as agents of, any Defendants in this action from implementing RCW 29A.40.110 and Wash. Admin. Code §434-261-050 in any future elections in the State of Washington without first implementing the following measures:

   a.   Adopt, after consultation with appropriate subject matter experts, published standards for determination of matching signatures

   b.   Adopt and publish a training manual approved by appropriate experts

   c.   Design and implement a quality control methodology that checks at random intervals, rejected signatures for lack of compliance with the published standards

   d.   Design and implement a meaningful process to permit a voter to timely cure a ballot determined to contain a mismatched signature

   e.   Publish, after each election, the number of rejected ballots by race of the voter and voting precinct

   f.   Publish the names of election staff and Canvassing Review Board members who receive training and date of such training

g.  Provide Cure Forms and Signature Update Forms in Spanish on County Auditor's webpage and in County Elections Offices.

h.  Require Canvassing Review Board and Election Staff training be open to the public and that all persons be permitted to attend.

i.  Publish notice of meeting location and time in county libraries and other community locations.

j.  Require Canvassing Review Boards to conduct their meetings at a time and location that is accessible to the public to ensure public is informed and able to attend.

k.  Follow all further remedies recommended by expert testimony.

165.  An order, pursuant to 42 U.S.C. § 1988, 52 U.S.C. § 10310, and other applicable laws, for Defendants to pay all costs, including reasonable attorneys' fees and litigation expenses incurred by Plaintiffs in connection with this action; and Grant any other relief that the Court may deem just and proper, and as may be necessary to afford Plaintiffs the full relief to which they are entitled under the United States Constitution and the Voting Rights Act.

166.  Grant any other relief that the Court may deem just and proper, and as may be necessary to afford Plaintiffs the full relief to which they are entitled under the United States Constitution and the Voting Rights Act.

Dated this 7th day of May, 2021.          Respectfully submitted,

**AMEND LAW, LLC**

By: */s/ Molly P. Matter*
    Molly P. Matter, WSBA # 52311
    P.O. Box 13203

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

1    Burton, WA 98013
     Phone: 206- 280-8724
2    Email: molly@amendlawmatter.com

3    and

4    **UCLA VOTING RIGHTS PROJECT**

5
     Chad W. Dunn*
6    Sonni Waknin*
     Alana Friedman*
7    3250 Public Affairs Building
     Los Angeles, CA 90065
8    Telephone: 310-400-6019

9
     **LAW OFFICES OF LUIS ROBERTO VERA, JR.**
10
     LUIS ROBERTO VERA, JR.*
11   1325 Riverview Towers
     111 Soledad St Ste 1325
12   San Antonio, TX 78205-2260
     Telephone: 210-225−3300
13   lrvlaw@sbcglobal.net

14

15   *Attorney for Plaintiffs*

16
     * Pro Hac Vice Motion Forthcoming
17

18

19

20

21

22

23

24

25

26

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**