# EXHIBIT CC

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF WASHINGTON
 2     _____
 3     JESSE REYES, DANIEL REYNOSO,    )
       LEAGUE OF UNITED LATIN AMERICAN )
 4     CITIZENS, LATINO COMMUNITY FUND )
       OF WASHINGTON,                  )
 5                                     )
                     Plaintiffs,       )
 6                                     )
          v.                           ) No. 4:21-CV-05075-MKD
 7                                     )
       BRENDA CHILTON, in her official )
 8     capacity as Benton County       )
       Auditor and Canvassing Review   )
 9     Board member, ANDY MILLER, in   )
       his official capacity as Benton )
10     County Prosecutor and Canvassing)
       Review Board member, JEROME     )
11     DELVIN, in his official capacity)
       as Benton County Canvassing     )
12     Review Board member, CHARLES    )
       ROSS, in his official capacity  )
13     as Yakima County Auditor and    )
       Canvassing Review Board member, )
14     JOSEPH BRUSIC, in his official  )
       capacity as Yakima County       )
15     Prosecutor and Canvassing Review)
       Board member, RON ANDERSON, in  )
16     his official capacity as Yakima )
       County Canvassing Review Board  )
17     member, SKIP MOORE, in his      )
       official capacity as Chelan     )
18     County Auditor and Canvassing   )
       Review Board member, ROBERT     )
19     SEALBY, in his official capacity)
       as Chelan County Prosecutor and )
20     Canvassing Review Board member, )
       BOB BUGERT, in his official     )
21     capacity as Chelan County       )
       Canvassing Review Board member, )
22                                     )
                     Defendants.       )
23     _____
24         ZOOM VIRTUAL DEPOSITION UPON ORAL EXAMINATION OF
25                     JEROME L. DELVIN, II


                                                              Page 1
```

```
 1   answered.
 2        A.   I don't recall.
 3        Q.   (By Ms. Waknin)  Are alternates required to
 4   attend any trainings on election processing or
 5   certification prior to serving on the canvassing review
 6   board?
 7        A.   I don't know that.
 8        Q.   Have you ever been selected as an alternate
 9   for a county commissioner to serve on the canvassing
10   review board?
11        A.   I don't recall specifically if I have.
12        Q.   And you don't know if there are any trainings
13   regarding election, like election certification for an
14   alternate to attend prior to serving on the canvassing
15   review board?
16             MS. CASTILLO:  Object to form.
17        A.   All I know is that there is training provided
18   by the Secretary of State's office.
19        Q.   (By Ms. Waknin)  Is it just that the training
20   is provided?
21             MS. CASTILLO:  Object to form.
22        A.   Yeah, I don't know of a requirement.
23        Q.   (By Ms. Waknin)  Is it common for alternates
24   to serve on the canvassing review board?
25        A.   What was your first part of that, was it
```

Page 53

```
 1   common?
 2       Q.   Yes.  Is it common for alternates to serve on
 3   the canvassing review board?
 4       A.   I don't think so.
 5       Q.   Is it rare then for them to serve on the
 6   canvassing review board?
 7       A.   Another commissioner?
 8       Q.   You -- when you were on the canvassing review
 9   board, you mentioned that a commissioner can serve, a
10   prosecuting attorney serves and also the county
11   auditor; is that correct?
12       A.   Yes.
13       Q.   Can they all appoint alternative members if
14   they have a conflict, as you defined?
15       A.   I don't know that.  I don't know.
16       Q.   But has it been rare for commissioners who
17   have served on the canvassing review board to appoint
18   other alternatives if they have a conflict?
19       A.   Can you define "rare"?  I mean, I would say
20   that it happens.
21       Q.   Jerome, how would you define "rare"?
22       A.   Like once in a blue moon.
23       Q.   And so based off of your definition, is it
24   rare for an alternate to serve on the canvassing review
25   board?
```

Page 54

1    control over what other -- how other elected officials
2    hire their staff?
3         A.   No.
4         Q.   Do you know if the county auditor's office
5    requires any qualifications for election staff?
6         A.   I don't know.
7         Q.   Do you know who specifically hires the
8    election staff in Benton County?
9         A.   I can only make a presumption.
10        Q.   What is your presumption?
11        A.   The county auditor.
12        Q.   Do you know when those staff members are
13   hired?
14        A.   Do I know what now?
15        Q.   When the election staff members are hired?
16        A.   No, I don't know.
17        Q.   Do you know if they are required to receive
18   any training before they can become election staff
19   members?
20        A.   I don't know.
21        Q.   Do you know if any of the staff members that
22   support the CRB receive any trainings in election
23   processing?
24        A.   No, I don't know that.
25        Q.   Have you talked to any of the staff members

Page 63

```
 1   for the canvassing review board when you've been on it?
 2        A.   Oh, yeah.  Well, yeah, we're talking while
 3   we're -- while we're doing the processes of the
 4   ballots.
 5        Q.   What do you talk about when you're processing
 6   the ballots?
 7        A.   The ballots.
 8        Q.   What specifically about the ballots?
 9             MS. CASTILLO:  Object to form.
10        A.   Maybe ask the questions about what the RCW or
11   the WACs say.  I mean, it's a conversation about the
12   ballots in front of us, whatever that may be.
13        Q.   (By Ms. Waknin)  Are the staff members
14   lawyers?
15        A.   Are they lawyers?
16        Q.   Yes, are the staff members --
17        A.   No, I don't think so.  I think the only
18   lawyers we have are in the county prosecutor's office.
19        Q.   And how do the staff members of the CRB know
20   the specific RCWs or you called them WACs?
21        A.   Yeah, that's the Washington Administrative
22   Codes.
23        Q.   How do the -- how do the staff members know
24   the RCW or the WACs?
25        A.   They have a binder that we refer to, so.
```

Page 64

| | | |
|---|---|---|
| 1 | Q. | Who made that binder? |
| 2 | A. | I think one of them did put that binder |
| 3 | together.  I don't know if it was the auditor or one of |
| 4 | her staff. |
| 5 | Q. | And is that binder updated every year? |
| 6 | A. | I don't know that. |
| 7 | Q. | And you don't know who created the binder |
| 8 | that you all look at? |
| 9 | A. | I don't know. |
| 10 | Q. | Do you know if the binder was produced in |
| 11 | discovery related to this lawsuit? |
| 12 | A. | I don't know that. |
| 13 | Q. | What else is in the binder? |
| 14 | A. | Um, as far as I know when I've looked at it, |
| 15 | just the RCWs and the WACs. |
| 16 | Q. | Anything else? |
| 17 | A. | I don't recall anything else. |
| 18 | Q. | Do you review signature match standards in |
| 19 | the binder before reviewing signatures during the |
| 20 | certification process? |
| 21 | | MS. CASTILLO:  Object to form. |
| 22 | | MS. WAKNIN:  Can you state your objection, |
| 23 | Callie? |
| 24 | | MS. CASTILLO:  He just answered that within |
| 25 | the binder was this RCWs and the WACs, and you just |

Page 65

```
 1        A.   I would say that these are the same people,
 2   um, just off the top looking at the way they start
 3   their name and the loop and then the R at the end, um,
 4   the T's are similar except for they cross over at the
 5   top and not through.  I mean, you know, again, this
 6   would be one I'd be curious to know what the other two
 7   thought.  I mean, there's some similarities, I'd be
 8   willing to say okay on this one.
 9        Q.   So you would say that this is a matching
10   signature?
11        A.   Well, very similar, that it could be the same
12   person.
13        Q.   Is the goal then or is the objective of the
14   canvassing review board is just to figure out the
15   signatures are similar enough?
16             MS. CASTILLO:  Object to form.
17        A.   Well, I think you want to err on the -- on
18   the -- you want to err on the side of the voter to make
19   sure the votes count.  I mean, I think that's -- they
20   send out the -- they make the a phone call and the
21   letter out letting you know, you know, that there's
22   questions about your signature.  I mean, I've had that
23   happen to me.
24        Q.   (By Ms. Waknin)  You've had your ballot
25   flagged?
```

Page 109

Veritext Legal Solutions
866 299-5127

1      A.   Yes.
2      Q.   What happened when you had your ballot
3  flagged?
4      A.   I sent in a new signature to be put on file
5  that I currently sign, sign my current signature
6  because my signature changed over the years in the
7  legislature when I was signing so many papers each day,
8  the letters each day.  And they corrected it to be
9  like, you know, five minutes to fill out the form and
10 send it back in.
11     Q.   And do you remember what year your ballot was
12 flagged?
13     A.   It was either 15 or so more years ago.  I
14 wasn't a county commissioner.
15     Q.   Are you saying it was in 15, like 2015, or
16 was it 15 years ago?
17     A.   Fifteen years ago or more.
18     Q.   Okay.
19     A.   It's been a while.
20     Q.   So returning back to the signature.  If the
21 other two board members had said that they find the
22 signature suspect and might want to reject it, what
23 would you do in that situation?
24          MS. CASTILLO:  Object to form.
25     A.   Well, I would say I disagree and then be the

Page 110

```
 1                 REPORTER'S CERTIFICATE
 2
 3         I, MARY E. ROGERS, the undersigned Certified
 4   Court Reporter, pursuant to RCW. 5.28.010 authorized to
 5   administer oaths and affirmations in and for the State
 6   of Washington, do hereby certify:
 7         That the sworn testimony and/or proceedings, a
 8   transcript of which is attached, was given before me at
 9   the time and place stated therein that any and/or all
10   witness(es) were duly sworn to testify to the truth;
11   that the sworn testimony and/or proceedings were by me
12   stenographically recorded and transcribed under my
13   supervision, to the best of my ability; that the
14   foregoing transcript contains a full, true, and
15   accurate record of all the sworn testimony and/or
16   proceedings given and occurring at the time and place
17   stated in the transcript; that I am in no way related
18   to any party to the matter, nor to any counsel, nor do
19   I have any financial interest in the event of the
20   cause.
21          WITNESS MY HAND AND DIGITAL SIGNATURE this 7th
22   day of July, 2022.
23
24
     Mary E. Rogers
25   Washington State Certified Court Reporter No. 3339
```

Page 196